IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOAH RYAN JUSTUS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-637 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

O R D E R

AND NOW, this 15th day of September, 2023, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision finding that as of July 1, 2017, Plaintiff was no longer qualified to receive supplemental security income ("SSI") benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh

the evidence, nor reverse, merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff previously received SSI benefits as a child pursuant to 20 C.F.R. § 416.924. When he turned eighteen, his eligibility for benefits was re-evaluated, as is required by law, pursuant to the rules that apply to adults who file new applications for SSI benefits. *See* 20 C.F.R. § 416.987(a) & (b). In a decision dated March 26, 2021, the Administrative Law Judge ("ALJ") found that Plaintiff was no longer disabled as of July 1, 2017. Plaintiff takes issue with the ALJ's determination, arguing that she inadequately considered the fact that he required work accommodations within a structured setting. The Court disagrees and finds that substantial evidence supports the ALJ's decision that Plaintiff is no longer eligible for SSI.

The crux of Plaintiff's argument is that the ALJ relied heavily on his ability to perform a part-time job at a pizza shop in determining his residual functional capacity ("RFC") and finding him not to be disabled but failed to fully acknowledge that this work was performed in a structured environment with significant accommodations. He cites to both 20 C.F.R. § 416.973(c) and Social Security Ruling 11-2p, 2011 WL 4055665 (S.S.A. Sept. 12, 2011), which he asserts require an ALJ to consider whether work is performed under special conditions or within a structured setting and prohibit an ALJ from considering accommodations in determining whether the claimant can engage in substantial gainful activity. While Plaintiff's general statement of law is correct, in the context of this case the ALJ adequately considered any special assistance Plaintiff received and did not improperly assume the availability of accommodations in finding him able to work.

There are a variety of ways in which a job can be considered to be performed under special conditions or within a structured setting, which includes things such as assistance from other employees, the ability to work irregular hours or take frequent breaks, special arrangements or equipment, permission to work at a lower standard of productivity or efficiency than other employees, or being given an opportunity because of family relations or an altruistic employer. *See* 20 C.F.R. § 416.973(c). As stated in Ruling 11-2p, which applies specifically to younger adults such as Plaintiff:

> If a young adult can function only if he or she receives more help than would generally be provided to people without medical impairments, we consider how well the young adult would function without the extra help. The more extra help or support of any kind that a young adult receives because of his or her impairment(s), the less independent he or she is in functioning, and the more severe we will find the limitation to be.

*Id.* at *8. The Ruling explains that "[a]ccommodations can include a change in setting, timing, or scheduling, or an assistive or adaptive device." *Id.* Accordingly, receiving such special assistance must be considered, but is not in and of itself dispositive of a claimant's disability.

The more special consideration given to a claimant, the more likely the claimant will be found to be disabled. The ALJ's analysis here complied with this standard.

The special consideration Plaintiff claims to have received includes (1) that he was hired with a job coach through a "Work Based Learning Experience" with the Pennsylvania Office of Vocational Rehabilitation ("OVR"), (2) that he was permitted to work reduced hours, and (3) that he was permitted to take additional breaks. (Doc. No. 15, pp. 9-11). The ALJ, though, acknowledged and discussed all of these factors in making her findings. She recognized, for instance, that Plaintiff had an OVR counselor in connection with his job. (R. 19, 21). Plaintiff does not explain how the presence of the counselor when Plaintiff started his job indicates an inability to perform substantial gainful employment, but as the ALJ noted, the counselor actually opined that Plaintiff had performed well and that he was capable of holding a full-time job. (R. 21, 595-605). The Court further notes that Plaintiff continued to work without any problem for some time after the OVR counselor was no longer involved. As for Plaintiff's claim that his reduced hours constituted an employer accommodation, the ALJ addressed the issue and explained that, although Plaintiff did work a reduced schedule, he was hired only to work part-time in the first place and that the job was never meant to be a full-time position. (R. 21, 46). His employer, in fact, stated that there were "only so many hours available" for Plaintiff to work. (R. 639). While Plaintiff implies that this was itself done as an accommodation, when asked if his employer purposefully gave him less work to do than other employees, he stated that he did not know. (R. 52).

Therefore, the ALJ found that the first two ways in which Plaintiff claims to have received special treatment were not really accommodations or special consideration at all. Substantial evidence supports this finding. It is the third alleged accommodation, the need for additional breaks, that requires a little further discussion. The ALJ did acknowledge Plaintiff's need for a break during his five-hour shift to re-focus. (R. 19). She also asked the vocational expert ("VE") regarding the typical breaks permitted during the workday, to which the VE answered, "Generally, there's two 10 to 15 minute breaks, one at the beginning of the shift, one at the end of the shift, with a 30-minute lunch break in the middle of the shift." (R. 61). After confirming with the VE that the tolerable off-task time for employees was 10 percent, the ALJ asked if that 10 percent off-task period would include a scenario where a person needs an additional five-minute break, to which the VE replied affirmatively. (R. 62-63). Plaintiff contends that this was insufficient, arguing that the evidence shows Plaintiff needs not "a" break but multiple breaks during his 4–5-hour shift. He argues that the need for multiple unplanned breaks is outcome determinative and precludes him from any full-time gainful employment. This does not accord, though, with the actual record evidence.

Plaintiff is correct that it is ambiguous how many breaks Plaintiff's employer indicated that he needed. Plaintiff's employer specifically said, "He does need some break to help him re-focus." (R. 639). This certainly could be read to include more than a single break during Plaintiff's shift. However, the ALJ accounted for this in her questioning of the VE. As noted, the VE testified that a five-minute break in addition to the regularly scheduled break during the first half of a full-time shift would fit within the tolerable level of off-task time. In other words, one break is generally permitted to anyone, and another short break is generally tolerated. The

ALJ found that this testimony accurately accounted for Plaintiff's need for additional short breaks.

Plaintiff argues that the record shows the need for more breaks. However, in so doing, he cites primarily to his employer's statement that he needs "some break," which he characterizes as the need for some unknown quantity of multiple breaks. As noted above, this evidence is at best ambiguous. On the other hand, Plaintiff's own testimony is very much in line with the ALJ's findings. At the hearing, Plaintiff testified that his additional breaks were comprised of 5 to 10-minute talks with co-workers which he estimated typically occurred between one to three times during his shift. (R. 52-55). These short breaks generally fit within the limits tolerated by employers to which the VE opined. It is also noteworthy that the VE drew a sharp distinction between the type of breaks Plaintiff takes and those that would bring one away from the worksite. (R. 64-65). This is not a situation, therefore, where there is evidence of numerous unplanned breaks happening on a regular basis, and the ALJ did not find as such. Rather, she treated Plaintiff's extra breaks as exactly what he testified they are – a couple of short conversations with co-workers beyond the normal number of breaks. She reasonably relied on the VE, who testified that this would generally be tolerated by employers.

Plaintiff does suggest, at a few points, that an allowance for unscheduled breaks beyond the number afforded to employees generally is outcome determinative because such an allowance would constitute an accommodation that may not be considered in determining what work he could perform. However, this is largely a matter of semantics, and, as the District Court for the Middle District of Pennsylvania has explained, "confuses an important distinction between legally-mandated ADA accommodations – which may not be considered when making disability determinations – and informal accommodations traditionally made in the workplace, which are permissible factors to take into account when reaching a disability determination." *Tanner v. Berryhill*, No. 1:18-CV-1433, 2019 WL 2184767, at *11 (M.D. Pa. May 21, 2019). The court there explained that modifications that had become prevalent and commonly permitted by employers, whether called "accommodations" or otherwise, were not the type of accommodations meant to be excluded from a VE's or ALJ's analysis. *See id.* at **11-12 (collecting cases).

Hence, certain allowances that could be called accommodations – and that are not necessarily permitted to every worker – such as a sit/stand option or a work station near to a restroom, may be common enough that such an allowance is more aptly treated as a limitation that is part of the RFC rather than as an employer accommodation that cannot be considered. Indeed, any restriction in a claimant's RFC could be construed as an accommodation in certain contexts. Here, the accommodation of extra break time was considered by the ALJ and covered by the testimony of the VE. As noted, the ALJ's characterization of the nature and frequency of plaintiff's breaks was generally consistent with Plaintiff's own testimony, and even if Plaintiff's testimony could be read as exceeding the ALJ's findings, the ALJ was not, of course, required to accept that testimony without question. *See* 20 C.F.R. § 416.929(c)(4); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011). Here, she relied on other statements about Plaintiff's work behavior, objective medical evidence, and multiple supporting medical opinions. All of this constitutes substantial evidence in support of the ALJ's findings, especially in light of

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 17) is GRANTED as set forth herein.

s/Alan N. Bloch<br>
United States District Judge

ecf:        Counsel of record

---

the United States Supreme Court's reminder that the threshold for meeting the substantial evidence standard "is not high." *Biestek*, 139 S. Ct. at 1154.

   Accordingly, the Court finds that the ALJ applied the proper legal standards and that substantial evidence supports his findings. The Court will therefore affirm.